# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PENNY JO MUNAO, individually and on behalf of a class of similarly situated persons, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:20-cv-05235<br>) |
| COUNTRY PREFERRED INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

## DEFENDANT COUNTRY PREFERRED INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

Plaintiff's Complaint against Defendant, COUNTRY Preferred Insurance Company (hereinafter "CPIC"), should be dismissed in its entirety. Her claims for breach of contract and unjust enrichment are based on the total loss of her vehicle, but she nowhere alleges any facts to plausibly suggest that CPIC failed to pay what she was owed under her insurance policy's Collision Coverage. Accordingly, no breach of contract or unjust enrichment occurred as a matter of law.

CPIC issued a policy of automobile insurance (hereinafter "the Policy") to Plaintiff, Penny Jo Munao. After an automobile collision, Plaintiff tendered a claim to CPIC under Section 4, Coverage F of the Policy, which provides for Collision Coverage. Specifically, the Policy pays for a "loss," defined in Section 4 as "direct and accidental damage" to an insured vehicle. Plaintiff nowhere alleges CPIC failed to pay for her "loss." Rather, Plaintiff asserts only a supposed underpayment of "title and transfer fees," <u>which the Policy does not cover</u>.

Plaintiff's breach of contract claim fails as a matter of law because, as shown below, 1) the Policy does not require the payment of fees which Plaintiff seeks; 2) Plaintiff fails to allege she

incurred the fees at issue within the requisite time period for reimbursement; and 3) if Plaintiff had incurred the fees timely, then Plaintiff was paid the full amount of the title and transfer fees such that there can be no claim for underpayment. Her unjust enrichment claim should be dismissed for the same reasons as the contract claim, as there was no underpayment. Further, the unjust enrichment claim is improperly based upon a contract. Plaintiff's claims are also barred by the Policy's contractual limitations period. Finally, Plaintiff's claims must be dismissed because there is no private right of action to enforce the Insurance Code at issue, and this matter falls within the primary jurisdiction of the Department of Insurance.

## **ALLEGATIONS OF THE COMPLAINT**

CPIC issued a policy of automobile insurance, number P12A8664065, to Plaintiff for period May 15, 2018 to November 15, 2018. (Compl. ECF Dkt. 1-1, ¶ 31). Because she was unable to locate a full copy of the Policy, Plaintiff attached what she referred to as a "representative sample policy form in use by CPIC in the relevant period (Policy Form 11205)" as Exhibit B to her Complaint. (Compl. ECF Dkt. 1-1, ¶ 31, fn. 7, and Ex. B). A complete copy of the Policy (which does in fact include Policy Form 11205), is attached as **Exhibit 1**, and is properly considered on a Rule 12 motion because it is referred to in the Complaint and central to Plaintiff's claim. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431-32 (7th Cir. 1993) (*overruling noted, on other grounds*).

On or about July 22, 2018, Plaintiff alleges her insured vehicle was involved in a collision that rendered it a total loss. (Compl. ECF Dkt. 1-1, ¶ 56). Thereafter, Plaintiff tendered a claim to CPIC pursuant to Section 4 of the Policy (Section 4 – Physical Damage Coverage). (Compl. ECF Dkt. 1-1, ¶ 56). Section 4, Collision, Coverage F of the Policy provides "**we** will pay for collision damage to your **insured vehicle** or a **nonowned vehicle**, but only to the extent the **loss**

in each accident exceeds the deductible stated on the declarations page." (Compl. Ex. B, ECF Dkt. 1-1, p. 34-35; Ex. 1, Policy p. 10). Section 4, Collision, Coverage F of the Policy, defines "loss" as follows: "**loss** means the theft, or direct and accidental damage to an **insured vehicle** or **nonowned vehicle** including its equipment." (Compl. Ex. B, ECF Dkt. 1-1, p. 35; Ex. 1, Policy p. 11).

CPIC determined the value of Plaintiff's totaled insured vehicle to be $4,593.00 and calculated the applicable 7% sales tax at $321.51. (Compl. ECF Dkt. 1-1, ¶ 57, Compl. Ex. A, ECF p. 22, Compl. Ex. D, ECF p. 46). In settlement of the total loss, Plaintiff alleges that CPIC paid "Plaintiff and the other Class members only the market value of the damaged vehicle … [in her case, $4,593.00], along with 7.0% sales tax on that amount [in her case, $321.51], and 'applicable title and license transfer fees' of $120.00, less a deductible," which in her case amounted to a total of $4,534.51. (Compl. ECF Dkt. 1-1, ¶ 60, Compl. Ex. A, ECF p. 22). Notably, Plaintiff alleges CPIC paid her $4,593.00 for the total loss of her vehicle and nowhere alleges that amount was less than the "direct and accidental damage" – the "loss" – to her vehicle. (Compl. ECF Dkt. 1-1, ¶¶ 56-59) (Compl. Ex. B, ECF Dkt. 1-1, p. 35; Ex. 1, Policy p. 11).

Instead, Plaintiff alleges that, "[a]t the time [she] purchased her replacement vehicle, the total applicable 'title and license transfer fees' for a standard vehicle in Illinois was $196." (Compl. ECF Dkt. 1-1, ¶ 62). However, Plaintiff alleges CPIC paid a flat sum of $120.00 for "applicable title and license transfer fees" and underpaid the "title and license transfer fees" by $76.00. (Compl. ECF Dkt. 1-1, ¶¶ 60, 63). Plaintiff filed this action, individually and on behalf of a putative nationwide class, for the alleged systematic underpayment of state title and license transfer fees. (Compl. ECF Dkt. 1-1, ¶¶ 20, 65).

According to Plaintiff, CPIC was contractually obligated to pay the actual cash value

and/or replacement value of the vehicle which included "transfer and title fees" pursuant to 50 IL ADC § 919.80(c)(3)(A)(i). (Compl. ECF Dkt. 1-1, ¶10-15). But the Policy's Collision Coverage states nothing about actual cash value. In fact, the only mention of "actual cash value" in the Policy is in the section "Limits of Liability." (Compl. Ex. B at ECF Dkt. 1-1, p. 59).

Plaintiff further alleges that CPIC was contractually obligated to pay "transfer and title fees incurred on account of the purchase or lease of the [new] vehicle" "if within thirty days of the providing [a cash] settlement the insured has purchased a new vehicle." (Compl. ECF Dkt. 1-1, ¶ 11) (*citing* 50 IL ADC § 919.80(c)(3)(A)(i)). Notably, nowhere in the Complaint does Plaintiff allege that she purchased a replacement vehicle within the 30-day period, which Plaintiff acknowledges is a prerequisite to reimbursement of those fees. Instead, the facts alleged suggest that the fees were incurred after July 1, 2019, the date that the Illinois Vehicle Code increased the amount of the fees for title and transfer, which is well outside of the 30-day period. *See*, 625 ILCS 5/3-821.

## ARGUMENT

### I. Rule 12(b)(6) Standard.

"[A] complaint must allege facts bearing on all material elements necessary to sustain a recovery under some viable legal theory." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 849 (N.D. Ill. 2011). The plaintiff must allege facts that "'when accepted as true … state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007)*, (quoting, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "plausibility" standard demands sufficient factual allegations for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Olson v. Champaign Cty*., 784

F.3d 1093, 1099 (7th Cir. 2015). To avoid dismissal, the complaint must suggest that the plaintiff has a right to relief above the speculative level. *See, E.E.O.C. v Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007).

When a contract is referenced in the complaint and it is central to plaintiff's claims it can properly be considered on a Rule 12 motion. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-32 (7th Cir.1993) (*overruling noted, on other grounds*). When the allegations of a complaint are contradicted by the terms of the contract, the contract controls. *See, e.g., Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (noting that, on a motion to dismiss, "to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls."); *McWane, Inc. v. Crow Chi. Indus.*, 224 F.3d 582, 584 (7th Cir. 2000) ("The unambiguous contract controls over contrary allegations in the plaintiff's complaint.")

II. **Plaintiff Fails to State A Valid Claim for Breach of Contract Because the Facts Alleged Show She Was Paid for Her Loss and No Additional Amounts Are Owed For any Fees.**

The breach of contract count should be dismissed because Plaintiff nowhere alleges a failure to pay for her "loss" as defined by the Policy. The only purported breach is a supposed failure to pay fees relating to "actual cash value." Yet the Policy and recent Seventh Circuit law show that the Policy here in no way entitles Plaintiff to actual cash value.

"A breach [of contract] can only exist where a party fails to carry out a term, promise, or condition of a contract." *Officemax, Inc. v. NHS Human Sevs., Inc.*, No. 1:16 C 9111, 2017 WL 1022078, at *2 (N.D. Ill. Mar. 15, 2017) (*citing, Talbert v. Home Sav. Bank of Am., F.A.*, 638 N.E.2d 354, 358 (Ill. App. 1994)). Moreover, the "construction to be given insurance contracts, like other contracts, should be a natural and reasonable one." *Canadian Radium & Uranium Corp. v. Indem. Ins. Co.*, 104 N.E.2d 250, 254 (Ill. 1952); *TKK USA, Inc. v. Safety Nat. Cas. Corp.*, 727

5

F.3d 782, 788 (7th Cir. 2013). In addition, as the Seventh Circuit recently made clear, a limitation of liability is in no way a promise to pay. *Sigler v. GEICO Casualty Company*, 967 F.3d 658, 662 (7th Cir. 2020). Rather, it is a limit on coverage. *Id.*

This is illustrated by a recent case from this Court. *Coleman v. Garrison Prop. & Cas.*, 19 C 1745, 2019 WL 3554184 (N.D. Ill. July 31, 2019). In *Coleman*, the plaintiff brought a putative class action similar to this one asserting breach of contract claims based upon an alleged failure to pay the actual cash value. *Id*. As here, plaintiff asserted ACV included mandatory state fees for title and transfer. The Court rejected the argument and dismissed the complaint at the pleading stage, finding that the insurer made no such promise. The Court stated that the plaintiff:

> …puts too much emphasis on the definition of 'actual cash value' in the policy. As Defendants point out, the policy states that the 'actual cash value' … is the limit on Defendants' liability-not the amount Defendants promised to pay her.
> ***
> Defendants actually promised to pay Plaintiff for '**loss** caused by collision' … And 'loss' means 'direct and accidental damage', which 'includes a total loss, but does not include any damages other than the cost to repair or replace.'

*Id*., 2019 WL 3554184, at *2.

Plaintiff's claim that actual cash value is owed under the CPIC Policy fails for the same reason. Just as in *Coleman*, the Policy provides that actual cash value is the limit of CPIC's liability-not the amount CPIC promised to pay. As in *Coleman*, under the plain language of the Policy, Plaintiff was entitled to payment of a loss – meaning direct and accidental damage – and nothing more. Further, as the *Coleman* Court later stated upon dismissing the plaintiff's first amended complaint, plaintiff's allegations that defendant promised to pay on an actual cash value basis is conclusory and conflicts with the plain language of the contract, and therefore is to be disregarded. *Coleman v. Garrison Prop. & Cas.,* 19 C 1745, 2020 WL 489527, at *3 (N.D. Ill. Jan. 30, 2020).

In a similar Seventh Circuit case, the plaintiff likewise argued it was entitled to the actual cash value. *Sigler v. GEICO Casualty Company*, 967 F.3d 658, 662 (7th Cir. 2020). But the Seventh Circuit noted that this assertion "misconstrues a limitation of liability as a promise to pay." As here, the policy in *Sigler* provided for the payment of "loss," which was defined as "direct and accidental damage." Also, as here, the policy in *Sigler* provided that the actual cash value was the limit of liability. The plaintiff argued that he was entitled to the actual cash value for his total loss which he argued necessarily included title and transfer fees. *Id*. at 660. Applying the same reasoning as did the court in *Coleman*, the Seventh Circuit rejected plaintiff's argument and noted that the plaintiff had mistaken a "ceiling for a floor. The Limit of Liability section of the policy doesn't promise to pay these costs regardless of whether the insured incurs them; it simply describes the most that GEICO will pay … ." *Id.* The same is true in this case.

Indeed, as in both *Coleman* and *Sigler*, Plaintiff's argument is fatally flawed because there is no requirement for the payment of "actual cash value" under the Policy. Moreover, as in those cases, Plaintiff fails to identify any term of the Policy that was allegedly breached. The unambiguous language of the Policy states precisely what an insured is entitled to recover: "we will pay for collision damage to your insured vehicle or a nonowned vehicle, but only to the extent the **loss** in each accident exceeds the deductible … ." (Compl. Ex. B, ECF Dkt. 1-1, p. 34-35; Ex. 1, Policy p. 10). Section 4, Collision Coverage defines "loss" as follows: "**loss** means the theft, or ***direct and accidental damage*** to an insured vehicle or nonowned vehicle… ." (Compl. Ex. B, ECF Dkt. 1-1, p. 35; Ex. 1, Policy p. 11) (*emphasis added*). While Plaintiff asserts she is entitled to certain fees as a part of "actual cash value," nowhere does the Policy state that the insured is entitled to recover the actual cash value or replacement value and Plaintiff cites no such policy provision.

As in the above cases, the coverage granting language of the Policy states only that CPIC will pay for the collision "loss" defined as "direct and accidental damage." The only reference to actual cash value in the Policy is in the section "Limits of Liability." (Compl. Ex. B, ECF Dkt. 1-1 at 59, Ex. 1, Policy, p. 12). As *Sigler* makes clear, that reference sets a ceiling on coverage. It is not, as a matter of law, a coverage grant. Accordingly, Plaintiff's assertion that she is owed additional amounts for fees as part of "actual cash value" fails to state a claim upon which relief can be granted, as she alleges no Policy term that was supposedly breached.

### III. Plaintiff Fails to State A Valid Claim For Fees Pursuant To § 919.80(C)(3)(A)(I) Because Plaintiff Nowhere Alleges She Timely Incurred Any Such Fees.

Not only has Plaintiff not alleged a Policy term requiring payment of actual cash value or the payment of mandatory state fees, but Plaintiff's claim would also fail for the independent reason that she has not alleged that such fees where timely incurred.

Plaintiff's claim for title and transfer fees is based on Section 919.80. (Compl. ECF Dkt. 1-1, ¶ 9-14). In particular, Plaintiff alleges that "if the insurance company provides a cash settlement, and *if within thirty days* of providing that settlement the insured has purchased a new vehicle, the insurance company has to reimburse the insured for 'applicable sales taxes and transfer and title fees incurred on account of the purchase or lease of the [new] vehicle…" (Compl. ECF Dkt. 1-1, ¶ 11), *see also,* 50 IL ADC § 919.80(c)(3)(A)(i). Yet, nowhere in the Complaint does Plaintiff allege that fees were incurred within 30 days of the settlement. Plaintiff's only reference to when fees were incurred states "at the time Plaintiff purchased her replacement car," with no date or affirmation that Plaintiff incurred the fees within the 30-day period that Plaintiff acknowledges is a prerequisite to recover.

The *Coleman* Court also considered the obligation under Illinois statutory provisions providing for the payment of sales tax, transfer and title fees and found that even if the statutory

provisions were applicable, the plaintiff failed to demonstrate that she had incurred the fees within 30 days, which is a requirement under the statute. *Coleman*, 2019 WL 3554184 at *4. The Court held that, because plaintiff failed to allege in the complaint that the fees were incurred in the requisite 30-day period, defendant was not obligated to reimburse such fees. *Id*.

Notably, the Seventh Circuit in *Sigler* reached the same conclusion, finding that plaintiff's claim for breach of contract failed because plaintiff did not allege that he incurred the fees nor that the fees were incurred before the deadline specified in the regulation. *Sigler*, 967 F.3d at 662.

Plaintiff's claim for reimbursement of title and transfer fees fails for the exact same reasons articulated in *Coleman* and *Sigler*. Despite relying upon § 919.80(c)(3)(A)(i) and acknowledging the 30-day requirement, there is no allegation in the Complaint that Plaintiff incurred title and transfer fees within the requisite period. As such, Plaintiff has failed to state a valid cause of action for reimbursement of title and transfer fees pursuant to § 919.80(c)(3)(A)(i).

### IV. Alternatively, Even If Plaintiff Had Incurred Title And Transfer Fees Within The 30-Day Period, Then Plaintiff Fails To State A Claim For Underpayment.

Even if Plaintiff had alleged that she incurred the fees sought within the requisite 30-day period, her claim for an underpayment would still fail as a matter of law because CPIC paid Plaintiff the amount owed in full.

Plaintiff claims to have incurred $196.00 in title and transfer fees and cites 625 ILCS 5/3-821. (Compl. ECF Dkt. 1-1, ¶ 62). Plaintiff acknowledges she received payment from CPIC for title and transfer fees in the amount of $120.00. (Compl. ECF Dkt. 1-1, ¶ 63). Hence, Plaintiff claims to have been underpaid by $76.00. *Id*. However, CPIC's payment of $120.00 to Plaintiff equals the amount of "transfer and title fees" required by § 919.80(c)(3)(A)(i) that would have been owed to Plaintiff under 625 ILCS 5/3-821 **before July 1, 2019**. *See*, 625 ILCS 5/3-821 (listing different fees depending on whether fees were incurred before or after July 1, 2019). Specifically,

the "Certificate of Title" fee for a standard passenger vehicle incurred before July 1, 2019 was $95.00, but after July 1, 2019 that fee increased to $150.00. *See*, 625 ILCS 5/3-821(a). The "Transfer of Registration" fee was $25.00 before and after July 1, 2019. Therefore, if Plaintiff incurred the state fees prior to July 1, 2019, the total amount incurred for "transfer and title fees" would have been $120.00 - the exact amount Plaintiff acknowledges that CPIC paid her. If the fees were incurred after July 1, 2019, then Plaintiff did not incur the fees within the 30-day requisite period, as recognized in Paragraph 11 of the Complaint as the period dictated by statute for seeking reimbursement. (Compl. ECF Dkt. 1-1, ¶ 11); *See* 50 IL ADC § 919.80(c)(3)(A)(i).

Plaintiff alleges no other facts nor points to any other statute, regulation, or Policy term requiring she be paid any additional fees. Section 919.80(c)(3)(A)(i) requires only reimbursement of the applicable "**transfer and title fees.**" (*emphasis added*). As discussed above, fees incurred post July 1, 2019 for title and transfer would have been $150.00 + $25.00 respectively for a total of $175.00. While unclear, the additional $21.00 sought by Plaintiff may be attributable to various license plate fees as discussed in the Complaint. (Compl. ECF Dkt. 1-1, ¶¶ 43-44, 48, 67). However, any claim for license plate fees has no basis in either the Policy or in statute and is wholly without merit. *See* 50 IL ADC § 919.80(c)(3)(A)(i). As discussed in a recent and similar case in this Court, neither the Code nor the contract obligates the insurer to pay registration or license plate fees. *Pappas*, 2020 WL 3303004 at *5. License plate fees are not itemized in the Code. *Id*.; and 50 IL ADC § 919.80(c)(3)(A)(i).

Because the payment of $120.00 for title and transfer fees to Plaintiff was the proper amount of fees designated under the Illinois Vehicle Code for fees incurred prior to July 1, 2019, Plaintiff has no claim for underpayment. If, on the other hand, Plaintiff incurred fees after July 2019, then Plaintiff's claim fails as falling outside the 30-day statutory requirement.

## V. Plaintiff's Unjust Enrichment Claim Fails As A Matter Of Law Because She Alleges A Contract Governs Her Claim And That She Was Paid In Full.

Plaintiff's unjust enrichment claim must also be dismissed. As an initial matter, under established Illinois law, where a written contract governs the parties' relationship, an unjust enrichment claim fails as a matter of law. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). Here, Plaintiff herself specifically references and attaches to the Complaint the Policy which governs the parties' relationship. Further, a contract controls over any contrary allegations in a complaint. *Centers*, 398 F.3d at 933; *McWane, Inc.*, 224 F.3d at 584. For this reason alone, the unjust enrichment claim fails and must be dismissed with prejudice.

In addition, "[w]hen unjust enrichment rests on the same conduct alleged in another claim, unjust enrichment stands or falls with that claim." *Pappa*s, 2020 WL 3303004 at 6. To prevail on a claim for unjust enrichment, Plaintiff would have to demonstrate that a benefit was retained to her detriment. Plaintiff makes the conclusory allegation that $76.00 was not paid under the Policy and under the statute. However, as discussed above, Plaintiff was never owed that $76.00. If Plaintiff incurred fees for title and transfer timely within the 30-day requisite period, the amount for fees would have been $120.00, which is precisely the amount Plaintiff was paid. Hence, no benefit was withheld. On the other hand, if Plaintiff incurred the greater fees as alleged of $196.00, then these fees were incurred after July 1, 2019, well outside of the 30-day period, in which case Plaintiff was not owed reimbursement. Accordingly, Plaintiff has failed to state a valid claim for unjust enrichment and this claim also fails as a matter of law.

## VI. All Of Plaintiff's Claims Are Time Barred By The Policy's Contractual Limitations Period.

The Policy contains a contractual limitations provision relative to coverage, which states:

**Legal Action Against Us.** No suit or action for recovery of any claim may be brought against us until the insured has fully complied with all the terms of this policy. Further, any suit or action under Section 4 of this policy must be

11

> commenced within 12 months after the occurrence of the loss. The 12-month period will be extended by the number of days between the date the proof of loss is filed and the date the claim is denied in whole or in part.

(Compl. Ex. B, ECF Dkt. 1-1 p. 37, Ex. 1, Policy p. 13). Stated otherwise, the "Legal Action Against Us" contractual limitation period provides that any suit under the Policy's Collision Coverage "must be commenced within 12 months after the occurrence of the loss." *Id*.

Illinois Courts have repeatedly found that these types of contractual limitations periods in policies of insurance are valid and enforceable. *Wood v. Allstate Insurance Co.*, 21 F.3d 741, 743 (7th Cir. 1994); *15th Place Condominium Ass'n v. South Campus Development Team, LLC*, 14 N.E.3d 592, 598 (Ill. App. 2014). In fact, compliance with contractual limitations provisions has been found to be "a condition precedent to recovery under a policy of insurance and breach of such a provision precludes the insured's recovery under the policy and renders his suit subject to dismissal." *Garcia v. Metro. Prop. & Cas. Ins. Co.*, 666 N.E.2d 802, 804 (Ill. App. 1996).

Here, Plaintiff alleges that her "loss" occurred on July 22, 2018. (Compl. ECF Dkt. 1-1 ¶ 24). This Complaint was filed July 24, 2020, more than 24 months later. Accordingly, on the face of the Complaint, Plaintiff's lawsuit is barred by the contractual limitations period contained within the insurance policy and must be dismissed. Plaintiff's Complaint demonstrates that her lawsuit is untimely on its face and Plaintiff has failed to sufficiently plead facts to avoid the application of the contractual limitations provision. Her lawsuit is time barred.[1]

---

[1] Moreover, because Plaintiff cannot individually state an actionable claim against Defendant, she also cannot represent the class sought to be certified. *See, De Bouse v. Bayer*, 922 N.E.2d 309, 319 (Ill. 2009); *Uesco Indus., Inc. v. Poolman of Wisconsin, Inc*., 993 N.E.2d 97, 108-109 (Ill. App. 2013). Accordingly, the Complaint must be dismissed in its entirety, including all the claims Plaintiff asserts on behalf of herself as well as those she asserts on behalf of the purported class.

### VII. Plaintiff's Claims Are Barred By Illinois Law.

Plaintiff's breach of contract claim should also be dismissed because no private right of action is permitted under 50 IL ADC § 919.80(c)(3)(A). As discussed above, § 919.80(c)(3)(A) requires insurers to reimburse certain taxes and fees an insured incurs in replacing a totaled vehicle when provided proof of replacement within 30 days of settlement of the claim. 50 IL ADC § 919.80(3)(A). Plaintiff claims that CPIC failed to pay her title and transfer fees in settlement of her claim as mandated by Illinois law, and therefore breached the Policy. *See* Compl. ¶¶ 56-59. The administrative code providing for the payment of these fees, however, does not provide for a private right of action and instead leaves enforcement to the department of insurance. *See Weis v. State Farm Mut. Auto. Ins. Co.*, 776 N.E.2d 309, 311 (Ill. App. 2002) ("The enforcement of the insurance rules was clearly delegated to the Department of Insurance, and, as such, we conclude that a plaintiff cannot plead or pursue a private cause of action based on an insurer's violation of these rules").

Plaintiff's claim for breach of contract is therefore an impermissible attempt to make an end-run around the lack of a private right of action under the insurance rules. *See Appert v. Morgan Stanley Dean Witter, Inc.*, No. 08-CV-7130, 2009 WL 3764120, at *3 (N.D. Ill. Nov. 6, 2009), *aff'd*, 673 F.3d 609 (7th Cir. 2012) (there is a "general prohibition against asserting an implied right of action under the guise of a state law claim, where no independent right of action has been found to exist"). Because the portion of the insurance code requiring CPIC to pay the fees and taxes claimed by Plaintiff does not provide for a private right of action, Plaintiff's breach of contract claim fails as a matter of law.

Plaintiff's claim is also barred under the doctrine of primary jurisdiction. Under the doctrine, when a regulatory agency has jurisdiction over the underlying acts that lie at the heart of

a claim, and is uniquely equipped to resolve the issue, the agency itself has jurisdiction over the claim and not the court. *Arsberry v Illinois*, 244 F.3d 558, 563 (7th Cir. 2001); *Ill. Bell Tel. Co., Inc. v. Global Naps Ill., Inc*., 551 F.3d 587, 594 (7th Cir. 2008); *City of Peoria v. Gen. Elec. Cablevision Corp*., 690 F.2d 116, 120-21 (7th Cir. 1982). The acts alleged in Plaintiff's Complaint fall squarely within the primary jurisdiction and special competence of the Illinois Department of Insurance. *See Weis*, 776 N.E.2d at 311. ("The enforcement of the insurance rules was clearly delegated to the Department of Insurance"). The Illinois Insurance Code gives the Director the power to examine and investigate any allegations relating to improper claims practices of insurers and hold hearings, enforce penalties and institute court actions, including actions seeking to enjoin persons from engaging in improper practices. 215 Ill. Comp. Stat. Ann. 5/425, 5/427, 5/429 (2018); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013). Squarely included within the ambit of the improper practices within the jurisdiction of the Department of Insurance is § 919.80(c)(3)(A), setting forth the requirements for the reimbursement of sales tax and fees in the settlement of total loss claims. Because the Director of Insurance is uniquely equipped to resolve Plaintiff's claim, the claim should be referred to the Department, and Plaintiff's Complaint should be dismissed.

## **CONCLUSION**

The CPIC policy requires only the payment of a "loss" which is defined as *direct* damage. Plaintiff nowhere alleges CPIC failed to pay this amount. Moreover, the Policy does not provide that Plaintiff is entitled to the actual cash value, nor any fees which could arguably be included in actual cash value. Plaintiff's breach of contract claim based on the Policy language fails. Likewise, Plaintiff's claim based on statutory law fails because Plaintiff does not allege she incurred the fees sought within the dictated 30-day period. Even assuming, *arguendo*, that Plaintiff incurred the fees timely, (within 30 days), Plaintiff's claim for underpayment nevertheless fails

because the fees paid by CPIC of $120.00 were the correct amount mandated under the law at the time ($95.00+$25.00).  Moreover, Plaintiff's claim for unjust enrichment is equally unavailing because it is based on a written contract and Plaintiff has failed to allege that any benefit was withheld under the Policy or under the statute.  Additionally, on the face of the Complaint, it is clear that Plaintiff's claims are barred by the Policy's contractual limitations period.  Finally, because there is no private right of action for violation of § 919.80(c)(3)(A), the Court should dismiss Plaintiff's attempt to end-run around this problem with a breach of contract action when this dispute falls within the primary jurisdiction of the Director of Insurance.  Accordingly, this matter should be dismissed as a matter of law.

Dated: September 10, 2020

Respectfully submitted,

COUNTRY PREFERRED INSURANCE COMPANY

By: */s/ William J. Kelly III*
One of the Attorneys for Defendant
COUNTRY Preferred Insurance Company

William J. Kelly III, ARDC No. 6324930
Chanda M. Feldkamp, ARDC No. 6298854
Kelly Law Partners, LLC
501 S. Cherry Street, Suite 1100
Denver, CO 80246
Tel. (720) 236-1800
Email: wkelly@kellylawpartners.com
       cfeldkamp@kellylawpartners.com

Lisa M. Lilly, ARDC No. 6272614
Kelly Law Partners, LLC
332 S. Michigan Avenue, Suite 121-L483
Chicago, IL 60604
Tel. (720) 236-1804
Email: lml@kellylawpartners.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 10, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

  Jeffrey A. Berman
  Patrick J. Solberg
  Anderson + Wanca
  3701 Algonquin Road, Suite 500
  Rolling Meadows, IL 60008

         */s/ William J. Kelly III*
         William J. Kelly III