UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PENNY JO MUNAO, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COUNTRY PREFERRED ) <br> INSURANCE COMPANY, ) <br> ) <br> Defendant. ) | No. 20 C 5235 <br><br> Judge Jorge L. Alonso |

**MEMORANDUM OPINION AND ORDER**

Believing her car insurer shorted her $76 when it paid her collision claim, plaintiff Penny Jo Munao ("Munao") filed in the Circuit Court of Kane County a two-count, purported-class-action complaint alleging breach of contract and unjust enrichment. After removing the case to this court, defendant filed a motion to dismiss.[1] For the reasons set forth below, the Court grants the motion to dismiss.

**I. BACKGROUND**

The following facts are primarily from plaintiff's complaint, which the Court takes as true. The quoted portions of plaintiff's insurance policy are from the policy attached to defendant's motion to dismiss.[2]

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d). This is a purported class action, and the class includes at least 100 members. [Docket 16 at ¶ 60]. The amount in controversy exceeds $5,000,000.00. [Docket 16 at ¶ 59]. Defendant is a citizen of Illinois (its State of incorporation and the location of its principal place of business). [Docket 16 at ¶ 71]. Defendant has identified at least one class member who is a citizen of a state other than Illinois. [Docket 17].

[2] In her complaint, plaintiff alleges that she was covered by policy number P12A8664065. [Docket 16-1 at ¶ 31]. She attached to her complaint an affidavit stating that she was unable to

On or about July 22, 2018, plaintiff's 2001 Acura MDX was involved in a collision that resulted in a total loss of the vehicle. At the time of the collision, plaintiff's vehicle was covered by an insurance policy issued by defendant Country Preferred Insurance Company ("Country" or defendant). Specifically, plaintiff's vehicle was covered by policy P12A8664065 (the "Policy") for the period of May 15, 2018 to November 15, 2018. Under the Policy, plaintiff had a $500 deductible for collision coverage.

The Policy states, among other things:

**SECTION 4-**
**PHYSICAL DAMAGE INSURANCE**
\* \* \*
**Collision, Coverage F**
… we will pay for collision damage to your insured vehicle or a nonowned vehicle, but only to the extent the loss in each accident exceeds the deductible stated on the declarations page.
\* \* \*
**Definitions, Section 4**

    1.    **Loss.** In Section 4 only, **loss** means the theft, or direct and accidental damage to an **insured vehicle** or **nonowned vehicle**, including its equipment.
\* \* \*
**Conditions, Section 4**
\* \* \*
    2.    **Limit of Liability**

        a.    **Our** limit of liability for a **loss** will be the lesser of the following:

           (1) The sum specified on the declarations page;

           (2) $500 for damages to a trailer **you** do not own;

---

attach to her complaint a copy of her actual policy, because she was unable to locate it. [Docket 16-1 at 41]. Defendant attached a copy of plaintiff's actual policy to its motion to dismiss. [Docket 10-5]. The Court may consider the copy defendant attached, because it is referred to in plaintiff's complaint and is central to her claim that defendant breached the policy. *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007).

> > (3) The actual cash value of the stolen or damaged part or vehicle; or
> >
> > (4) The cost to repair or replace stolen or damaged parts with parts of like kind and quality.
>
> \* \* \*
>
> d. **We** will determine actual cash value by applying a deduction to the replacement cost of the part or vehicle for the following at the time of **loss**:
>
> > (1) The decrease in value of the part due to wear, deterioration, or obsolescence; and
> >
> > (2) The decrease in value of the vehicle due to age and physical condition (wear, missing parts, rust, unrepaired damage, etc.).

(Policy at 10-12/Docket 10-1 at 14-16).

Plaintiff made a claim under the Policy, and defendant paid a cash settlement on or about July 27, 2018. [Docket 16-1 at p. 4 n. 2 & p. 22]. Defendant valued the car at $4,593.00. To that amount, defendant added 7.0% sales tax and $120 for "applicable title and license transfer fees." After subtracting the deductible, defendant paid plaintiff $4,534.51.

Plaintiff alleges that "[a]t the time [she] purchased her replacement vehicle," the applicable title and license transfer fee was actually $196.00, not the $120 defendant paid her. [Complt. ¶ 62/Docket 16-1 at ¶62]. She alleges that defendant underpaid her by $76.

Based on these allegations, plaintiff filed a purported class-action complaint, in which she asserts claims for breach of contract and unjust enrichment. Defendant moves to dismiss.

## II. STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a

complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Where a plaintiff alleges a breach of contract, a district court "may determine [the contract's] meaning as a matter of law" if "the contract is unambiguous." *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000). An "unambiguous contract controls over contrary allegations in the plaintiff's complaint." *McWane*, 224 F.3d at 584.

### III. DISCUSSION

#### A. Breach of contract

In Count I, plaintiff asserts that defendant breached the Policy. Under Illinois law, "insurance disputes are governed by general contract principles[.]" *Sigler v. GEICO Casualty Co.*, 967 F.3d 658, 660 (7th Cir. 2020). A court "must construe the policy as a whole and 'take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019) (quoting *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 757 N.E.2d 481, 491 (Ill. 2001)).

Plaintiff's theory of the case is that defendant breached the Policy by paying $120 for transfer and title fees when it was obligated to pay $196. Plaintiff makes several arguments to support this theory.

First, plaintiff argues that the Policy "promises to pay to 'repair or replace' a vehicle damaged by collision" (Plaintiff's Brief at 4/Docket 19 at 4) and that the language "repair or replace" necessarily includes the cost of transfer and title fees. This argument misquotes the Policy, which does not promise to pay to "repair or replace" anything, let alone a *vehicle*. In Section 4's Limit of Liability provision, the Policy limits defendant's liability to the lesser of four options, including the "actual cash value of the stolen or damaged parts or vehicle" or the "cost to repair or replace stolen or damaged *parts* with parts of like kind and quality." (Policy at 12/Docket at 10-1 at 16) (emphasis added). The "repair or replace" language applies only to damaged parts, not to the entire vehicle. In any case, it is a limit of liability, not a grant of coverage. *Sigler*, 967 F.3d at 660.

Plaintiff next argues that the limit of liability to "actual cash value" means defendant must pay the transfer and title fees, which, according to plaintiff, are necessarily included in the cost of replacing the car. This argument runs headlong into *Sigler*, a decision the Seventh Circuit issued the same day plaintiff filed her complaint. The plaintiff in *Sigler* (much like this plaintiff) argued that a policy provision limiting liability to "actual cash value" meant the defendant was obligated to pay title and tag transfer fees (which Munao also seeks) and sales tax. The Seventh Circuit rejected the argument, explaining:

> This argument misconstrues a limitation on liability as a promise to pay. Put slightly differently, [plaintiff] mistakes a liability ceiling for a floor. The Limit of Liability section of the policy doesn't promise to pay these costs regardless of whether the insured incurs them; it simply describes the *most* that GEICO will pay in the event of a covered loss. To repeat: the coverage-granting language says only that GEICO will pay for the 'collision loss to the owned or non-owned auto,' with 'loss' defined as 'direct and accidental loss of or damage to' an insured vehicle or '[o]ther insured property.'

*Sigler*, 967 F.3d at 660.

As in *Sigler*, the grant-of-coverage language in this Policy does not promise to pay transfer and title fees. Rather, the Policy says, "we will pay for collision damage to your insured vehicle or a nonowned vehicle, but only to the extent the loss in each accident exceeds the deductible." The Policy goes on to define loss as "the theft, or direct and accidental damage to an **insured vehicle** or **nonowned vehicle**, including its equipment." The Limitation of Liability to "actual cash value" sets the maximum payable under the Policy. It is not a grant of coverage; it is not a promise to pay.[3]

---

[3] Plaintiff seems to think this case is different from *Sigler*, because "actual cash value" is not defined in the Policy. The Court disagrees. First, the Policy states how actual cash value will be determined, and fees are not mentioned in that explanation. (Policy at 12/Docket 10-1 at 16) ("**We** will determine actual cash value by applying a deduction to the replacement cost of the part or vehicle for the following at the time of **loss**: . . . (2) The decrease in value of the vehicle due to age and physical condition (wear, missing

6

Next, plaintiff argues that a provision of the Illinois Administrative Code covering transfer fees is incorporated into the Policy. (Plaintiff's Brief at 9/Docket 19 at 9). The Court agrees. As the Seventh Circuit explained in *Sigler*:

> An Illinois insurance regulation specifically addresses when an auto-insurer must pay sales tax and title and tag transfer fees in a total-loss claim, *and the regulation is incorporated into the policy as a default term as a matter of law*.

*Sigler*, 967 F.3d at 661 (emphasis added). The Illinois Administrative Code, in turn, provides:

> If a cash settlement is provided, and, if within 30 days after the receipt of the settlement by the insured, the insured purchased or leased a vehicle, the company is required to *reimburse* the insured for the applicable sales taxes and transfer and title fees incurred on account of the purchase or lease of the vehicle, but not exceeding the amount payable on account of the value of the total loss vehicle. . . . *If the insured cannot substantiate* such purchase and payment of such taxes and fees, by submission to the company of appropriate documentation *within 33 days* after the receipt of settlement, *the company shall not be required to reimburse* the insured for the sales taxes or transfer or title fees. *In lieu of this reimbursement procedure, the company may directly pay the required amounts of sales taxes and transfer and title fees to the insured at the time of settlement.*

50 Ill.Adm.Code § 919.80(c)(3)(A)(i) (emphasis added). In *Sigler*, the Seventh Circuit explained:

> The use of the word 'reimburse' is telling. The regulation mandates payment of these costs *if and only if* the insured (1) has purchased or leased a vehicle within 30 days of receiving a cash settlement and incurred applicable sales taxes and fees and (2) substantiates the purchase and payment of those taxes and fees within 33 days after the receipt of the settlement.

*Sigler*, 967 F.3d at 661. The Seventh Circuit affirmed dismissal of the complaint in *Sigler*, because the plaintiff had not alleged that she purchased a vehicle within 30 days of receiving her settlement and that she substantiated the payment within 33 days.

---

parts, rust, unrepaired damage, etc.)."). In any case, the "actual cash value" provision is a limit on liability (i.e., a ceiling), not a grant of coverage (i.e., a floor).

7

Munao has not alleged those things, either. Instead, plaintiff alleges that "[a]t the time that Plaintiff purchased her replacement vehicle, the total applicable 'title and license transfer fees' for a standard vehicle in Illinois was $196.00." (Complt. ¶ 62/Docket 16-1 at ¶ 62). This is an admission that plaintiff did not purchase her replacement vehicle until *after* the fees increased on July 1, 2019 (which means she did not purchase the vehicle within 30 days after the July 27, 2018 cash settlement). The Illinois Code sets out the transfer and title fees, and the cost for a certificate of title, prior to July 1, 2019 was $95. 625 ILCS 5/3-821(a). The cost for a certificate of title after July 1, 2019 was $150. 625 ILCS 5/3-821(a). The cost for a transfer of registration was $25 before and after July 1, 2019. 625 ILCS 5/3-821(a). By alleging the cost was $196 at the time she purchased a replacement vehicle, plaintiff has admitted her purchase was after July 1, 2019, i.e., plaintiff has admitted she did not purchase a vehicle within 30 days after the cash settlement.

In any case, plaintiff cannot prevail, because the Administrative Code goes on to state that, "[i]n lieu of this reimbursement procedure, the company may directly pay the required amounts of sales taxes and transfer and title fees to the insured at the time of settlement." 50 Ill.Adm.Code § 919.80(c)(3)(A)(i). That is exactly what plaintiff alleges defendant did here. When defendant paid the settlement, it included $120 for transfer and title (Complt ¶ 60/Docket 16-1 at ¶ 60), which is exactly what the statutory fees were at the time defendant paid the settlement on or about July 27, 2018, as well as for the 30 days after (625 ILCS 5/3-821(a)). Plaintiff's allegations establish that defendant complied with § 919.80(c)(3)(A)(i) of the Illinois Administrative Code.

Plaintiff has not stated a claim for breach of contract, and the defect is not curable. Furthermore, it is clear from the Policy and plaintiff's allegations that defendant has not breached the Policy, as a matter of law. Count I is dismissed with prejudice.

### B. Unjust enrichment

In Count II, plaintiff asserts a claim for unjust enrichment. Defendant argues that plaintiff's claim for unjust enrichment cannot stand in the face of the Policy. The Court agrees. Plaintiff did not respond to defendant's motion to dismiss as to the unjust enrichment claim, so she has waived any arguments she could have made.

As defendant points out, under Illinois law, a party cannot recover for unjust enrichment in the face of a contract. *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *see also People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill.2d 473, 497 (Ill. 1992) ("where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.") (citation omitted). That is because unjust enrichment is an *equitable* claim that "is only available when there is no adequate remedy at law." *Cohen*, 735 F.3d at 615. A plaintiff can plead in the alternative "as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense." *Cohen*, 735 F.3d at 615. Plaintiff comes close to pleading in the alternative. She alleges that, if there is no "contractual provision" that "expressly governs the claim," then defendant was unjustly enriched. [Docket 16-1 at ¶ 83]. The question, though, is not whether the contract contains a *provision* that says what plaintiff wishes it said; the question is whether a contract exists. Here, it is clear from plaintiff's allegations (and her affidavit), as well as from the Policy attached to defendant's

motion to dismiss, that a contract (namely, the Policy) exists. Plaintiff has no claim for unjust enrichment.

Count II is dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion [9] to dismiss. The Court dismisses Counts I and II with prejudice. Civil case terminated.

SO ORDERED. ENTERED: April 19, 2020

_____
JORGE L. ALONSO
United States District Judge